IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAWNA FARNSWORTH                                         PLAINTIFF

                     v.                        CIVIL NO. 16-5228

NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                                     DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Dawna Farnsworth, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. <u>See</u> 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on July 19, 2012, alleging an inability since December 31, 2009,[2] due to back problems, neck problems, anxiety, depression and fibromyalgia. (Doc. 10, pp. 47, 115, 314, 321). For DIB purposes, Plaintiff maintained insured status through March 31, 2013. (Doc. 10, pp. 18, 176, 329). An

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] Plaintiff amended her onset date to March 25, 2011. (Doc. 10, pp. 88, 176).

1

administrative video hearing was held on August 9, 2013, at which Plaintiff appeared with counsel and testified. (Doc. 10, pp. 83-105).

In a written decision dated September 19, 2013, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with limitations. (Doc. 10, pp. 173-187). Plaintiff requested review of the unfavorable decision by the Appeals Council. (Doc. 10, p. 263). On October 3, 2014, the Appeals Council entered an order remanding the case back to the ALJ. (Doc. 10, pp. 194-198). A supplemental administrative video hearing was held on March 30, 2015. (Doc. 10, pp. 44-82).

By written decision dated September 3, 2015, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Doc. 10, p. 20). Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease; a rotator cuff abnormality; obesity; bilateral vision loss; a urinary tract disorder; ovarian cysts, status post postoperative; anxiety disorder; depressive disorder; and borderline personality disorder. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 10, p. 21). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb, balance, stoop, kneel, crouch and crawl, she can occasionally reach overhead bilaterally, and she can frequently finger/handle bilaterally. She cannot do work requiring excellent vision but can avoid workplace hazards and can distinguish between shapes and colors of items such as nails, screws and bolts. She can do simple, routine and repetitive tasks in a setting where interpersonal contact is incidental to the work performed. She can respond to supervision that is simple, direct and concrete.

(Doc. 10, p. 23). With the help of a vocational expert, the ALJ determined that Plaintiff could perform work as a fishing reel assembler, a motor polarizer, and a cuff folder. (Doc. 10, p. 34).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 13, 2016. (Doc. 10, pp. 8-11). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**III. Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ erred at Step 5; 2) the ALJ erred when considering Plaintiff's urinary/abdominal issues; and 3) the ALJ erred in his credibility analysis.[3]

   **A.   Insured Status and Relevant Time Period:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on March 31, 2013. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of March 25, 2011, her amended alleged onset date of disability, through March 31, 2013, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

With respect to Plaintiff's SSI application, benefits are not payable prior to the date of application, regardless of how far back disability may, in fact, be alleged or found to extend.

---

[3] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

See 20 C.F.R. § 416.335. Therefore, the relevant period is from July 19, 2012, the date Plaintiff protectively applied for SSI benefits, through September 3, 2015, the date of the ALJ's decision.

### B. Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record revealed that Plaintiff completed a Function Report on August 12, 2012, wherein she indicated that she was unable to prepare meals or perform household chores without excessive pain. (Doc. 10, pp. 396-403). Plaintiff also indicated that she was able to shop occasionally for prescriptions and groceries and that she spent her time watching television and talking on the telephone. Plaintiff reported that she did not go anywhere on a regular basis. However, the record revealed that Plaintiff reported the ability to perform activities of daily living independently; that she could walk four miles at a moderate pace without difficulty; that she

6

usually attended karaoke weekly; and that she was able to participate in social events such as church and going out to eat and to the movies. (Doc. 10, pp. 906, 923, 939, 950, 1129, 1178, 1193, 1343, 1819, 1934, 2022).

With regard to Plaintiff's alleged mental impairments, the record failed to demonstrate that Plaintiff sought on-going and consistent treatment from a mental health professional during the relevant time period.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

As for Plaintiff's physical impairments, the record revealed that Plaintiff sought treatment for back and neck pain which included an anterior cervical discectomy and fusion in June of 2012. While Plaintiff continued to report severe pain, the medical records revealed that Plaintiff was often found to have a non-tender back and neck, and full range of motion in her joints and extremities.  Plaintiff's treating physicians also noted on more than one occasion that there were no physical findings to support her level of pain or her pain response appeared exaggerated for her symptoms. (Doc. 10, pp. 1314, 1460, 1471).  Plaintiff also sought treatment for urinary and abdominal issues during the relevant time period.  A review of the record revealed that Plaintiff responded well to treatment and as late as January of 2015, Plaintiff denied experiencing dysuria, frequency, or urgency, and also denied experiencing abdominal pain.

With regard to Plaintiff's testimony that her medications cause her to be drowsy and sedated, the Court points out that the medical evidence does not indicate Plaintiff discussed these side effects with her treating physicians. Richmond v. Shalala, 23 F.3d 1441, 1443-1444 (8th Cir. 1994).  A review of the record revealed that while Plaintiff reported experiencing side

effects to Dr. Mary J. Sonntag during the consultative mental evaluation, Plaintiff denied experiencing these side effects to her treating physician on October 29, 2012, April 21, 2014, September 12, 2014, and December 15, 2014. (Doc. 10, pp. 1010, 1480, 1511, 1550).

With regard to the third-party statement completed by Plaintiff's sister, the ALJ properly considered this evidence but found it unpersuasive. This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.    ALJ's RFC Determination and Medical Opinions:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart,

353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

When determining the RFC, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. Id. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform sedentary work with limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

9

In determining Plaintiff's RFC, the ALJ gave little weight to the medical source statement completed by Mary Kaye Kerby, APN, opining that Plaintiff could perform less than sedentary work. (Doc. 10, pp. 1076-1078). After review, the Court finds that the ALJ did not err in discounting the opinion of Nurse Kerby. The ALJ declined to give controlling weight to Nurse Kerby's opinion for good and well-supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."). The ALJ also took Plaintiff's obesity into account when determining Plaintiff's RFC. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

**D.    Hypothetical Question to the Vocational Expert:**

Plaintiff contends that the ALJ erred in finding that jobs existed in significant numbers in the national economy that Plaintiff could perform.

At the supplemental hearing, the vocational expert testified that with respect to the fishing reel assemblers, there were 58 jobs in the state of Arkansas and 3,036 in the national economy. (Doc. 10, p. 79). Regarding the motor polarizer, there were 130 jobs in the state of Arkansas and 4,839 in the national economy. Finally, with respect to the cuff folder, there were 106 jobs in the state of Arkansas and 3,916 in the national economy. The Eighth Circuit found in Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) that 200 jobs of addresser or document preparer in Iowa and 10,000 in the national economy to be a significant number. More recently, in Gholston v. Colvin, No. 14-CF-2064-LRR, 2015 WL 6167824 (N.D. Iowa Oct.21, 2015), in analyzing the issue presented, the Court referred to Welsh v. Colvin, 765 F.3d 927, 930 (8th

10

Cir. 2014), where the Eighth Circuit held that where there were 330 positions regionally and 35,000 positions nationally, there were a sufficient number of jobs to satisfy the requirement. 2015 WL 6167824 at *23. The Court in Gholston therefore found that 550 local positions in Iowa and 57,700 positions nationally fell within the bounds set forth by the Eighth Circuit.

Although in this case the number of local jobs available is less than those referenced by the cases cited above, the Court also finds guidance in 42 U.S.C. §423(d)(2)(A), which provides, in pertinent part, that "'work which exists in the national economy'" means work which exists in significant numbers either in the region where such individual lives *or* in several regions of the country."(italics added). In the case now before the Court, there are 3,036 fishing reel assemblers in the national economy, 4,839 motor polarizers, and 3,916 cuff folders in the national economy. Therefore, even if the Court found that 294 local jobs were not significant numbers, which it does not, there would still be significant numbers of such jobs in the national economy.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a fishing reel assembler, a motor polarizer, and a cuff folder. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## IV.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 4th day of August 2017.

/s/   *Erin L. Wiedemann*
　　　HON. ERIN L. WIEDEMANN
　　　UNITED STATES MAGISTRATE JUDGE